All right, take your time setting up, but let me go ahead and call the second case. It is number 21-11791, Loyce, North America of Alabama versus the NLRB. Okay, Mr. Starling, whenever you're ready. May it please the Court, my name is Jeff Starling. I represent the petitioner and employer in this case, Loyce, North America of Alabama. How do you pronounce the company's name? Loyce. Loyce, okay. Loyce. Yes, Your Honor. We're here on an appeal by Loyce from a National Labor Relations Board decision upholding the decision of an administrative law judge, finding that Loyce violated the National Labor Relations Act by terminating the employment of employee Floyd Avery for engaging in union activities, particularly while he was participating in an unemployment hearing while he was on the clock at Loyce. I think the problems with the decisions of the National Labor Relations Board and the of this case. Those are Mr. Avery was a slurry operator, he had a regular break from 9 to 9.15 every day that was a paid break. On the particular day in issue, June 1 of 2018, he says he took his break at 9.12. At 9.21, he received a phone call from an unemployment hearing officer and although he only had six minutes left in his break, Mr. Avery stayed on that phone call for 31 minutes, 25 minutes past his break. Mr. Avery did not advise his supervisor or anybody in management that he was going to be on an extended break period. He did not, after the end of the unemployment hearing, go tell his supervisor or anyone in management that he had been on that unemployment call and that he had not been working during the 25 minutes after his break time. He did not take any steps to correct his time records to reflect that for that 25 minutes or so, he had not been actually working for the loss. And so the record reflected that he was. A lot of those things in the past for other people had not been issues. And so the ALJ found in part that the reasons given by the company for termination were pretextual. Yes, Your Honor. What the ALJ said was that there was testimony from other employees, and they don't deny that there was testimony from other employees, including management employees, that employees at times had taken or received phone calls while at work, but the difference was those had been extremely short calls to take care of something such as a child care issue or family emergency. That's what the testimony was. There was no testimony and the General Counsel for the NLRB did not elicit testimony that any other employees had engaged in extended periods of time on phone conversations away from work. And the issue here for Mr. Avery was, that's all admitted testimony as best what he did. He was on a last chance agreement. He'd already been a no call, no show twice. Last chance agreement. He agreed that if he violated any rule of policy, that his appointment would be terminated. And the policies in place were very straightforward. If you look at the working hours and timekeeping policy, it says a supervisor's approval is required for any non-routine or unscheduled breaks, as well as any time off. He did not get approval from the supervisor before or after for what was clearly an unscheduled break. How was he supposed to get approval before? He claims that he did not know about it before. There was disputed testimony because he... But the ALJ made a credibility finding. We do have a credibility finding, but that does not affect the ultimate issue here because he could have gone to a supervisor afterwards or to a member of management and said... But I mean, I guess Mr. Barry was on the phone call during the entire time, so it's not like Mr. Barry didn't know that he was on the phone call. Yes. Mr. Barry is not a supervisor, though. Mr. Barry was not at the plant where he worked. Mr. Barry is... I mean, doesn't he make the ultimate decisions? Mr. Barry certainly is involved in the decision, was involved in the last chance agreement, but it's not his role to go and check Mr.... I understand what you're saying, but the standard of review here is a pretty hard one to meet. I mean, there just has to be substantial evidence that supports the board's decision. And that being the case, why couldn't... Why wasn't it within the board's authority to determine based on the evidence that that was pretextual considering that Mr. Barry was on the phone call and knew all about it? It's not like Mr. Avery ducked out for an hour and went to the beach and came back and hoped no one found out. Why? I mean, Mr. Avery was involved on the phone call and it related to Loas' business in a certain way. Why under the standard of review couldn't... Wasn't it within the authority of the ALJ and then later the NLRB to determine that this was pretextual? Because that's not Mr. Avery's... Mr. Barry's role. Mr. Avery's job is to keep up with his time, make sure he submits correct time that's not false, which he did here. It's his job at the plant where he works to advise his supervisors if he's not going to be on break. The fact that Mr. Barry became aware of it didn't mean that there's a get out of jail free card for Mr. Avery, that he had no further obligation to advise anybody at his plant or to correct a record that was in fact false. He proceeded to do that. Was there any... The fact that... Was there any... Did the work policy that you referenced say anything about union activities with government hearings? No. That particular policy, Your Honor, there were... Why couldn't the ALJ determine that the company's reason was pretextual? That the policy did not cover this sort of an excess break? Because there's... For exactly the reason that the policy's straightforward. If you're going to engage in a non-routine or unscheduled break, which this was, you have to get supervisory permission. There is no exception as for a governmental hearing. When he filled out his record, did he falsify the record by putting down he only had the 15 minute break and not the whole 40? Yes, Your Honor, because in this way, there's an automated time clock and it does not count the time off for breaks. It's a paid break. So he did not go and report to his supervisor or to somebody in record keeping, hey, I was off for almost 30 minutes participating in a phone conference. That was not working time. I wasn't working for the company. I should not be paid for that time. He never did that. When it was brought to his attention, though, didn't he offer to give up any pay for that period? That's absolutely correct, Your Honor. After he had been caught, he then asked, he said, doc, my time. Well, you say he had been caught, but again, I get back to the whole notion that, I mean, the big boss was on the phone the whole time. So I mean, he's either the most inept criminal, right, because, I mean, thinking that he's going to get away with something, or, you know, this was something that the ALJ could find was pretextual because of the circumstances here and the fact that he volunteered to give back the money when he was approached about it. I mean. There's nothing in the record that shows that Mr. Berry did this because of his union activity. The whole basis for the termination was that he did not get permission to engage in a break. He didn't correct his time records. That's not because of union activity. The same would be true. It's just like the no solicitation. You say that, but there's evidence in the record that they were doing this because of union activities which exceeded his break time, right? Yes. So the district, I say district court, the ALJ had evidence, direct evidence from which to find that this was because of his union activities. Now you say it was because he violated a company policy. The ALJ says, looking at everything here, you guys are just making this up, particularly because when he was given the last chance agreement, what was it that Mr. Avery was told? Hey, the company's trying to get rid of you. I think it's unfair. So let's give you this last chance agreement to be able to keep you on. That was Mr. Berry telling Mr. Avery that other people thought he should be terminated for a second no-call, no-show, which the policies make clear is ground for immediate termination. On the other hand, that policy also says within a year, and the second no-cause, no-show occurred more than a year later after the first one, and what did he work there for, 27 years without any problem? And then all of a sudden, we have the union activity in 2017 and 2018, and now all of a sudden, he's got all these problems. Yes, to correct one thing, Your Honor, that policy does not say that it rolls off after a year. That is a separate policy relating disciplinary action and a separate policy by the company put into the general conduct rules. The attendance policy in which the no-call, no-show policy is found does not say anything about it rolling off after a year. It has time periods for absences. It simply states no-call, no-show two times and you're out. That's what it says. It does not say anything about rolling off. So it's a separate policy. What does the rolling off policy say? That policy is in the general conduct rules of safety, a separate policy that talks about other disciplinary actions. The attendance policy is a separate policy and addresses attendance differently than other types of rules violation the company has. So it doesn't address it in the same way as someone who causes an accident at work or something else of that nature. The part about there was evidence of this being pretext is if you look at it, the judge starts with this statement that the company said that Mr. Avery was terminated for engaging in union activity or for doing union business. The judge leaves off the part that says on company time. This is no different than a no solicitation, no distribution rule that the MRB has held up for 50, 70 years. If someone is engaged in soliciting people to join a union during working time, the company has the right to discipline them. And that's exactly the type of thing that happened here. I see I'm out of time. All right. Thank you very much. You've saved your time for rebuttal, Mr. Starbucks. Mr. Seid. Good morning, Your Honor. May it please the Court, David Seid, the Labor Board. Before you start, Mr. Seid, you're the cross-petitioner, but the only thing you're cross-petitioning on is for upholding the NLRB's order, right? Correct. There's nothing else you're asking us to do besides that, right? Correct. Simply enforcement of the Board's order. Right. That's correct. Substantial evidence supports the Board's finding that the company unlawfully suspended and discharged Avery for three reasons. First, there's no dispute that Avery was an active union supporter, he served as union vice president, and that he was engaged in union activity when he participated in the unemployment hearing. Second, there's both direct and circumstantial evidence of unlawful motivation. Direct evidence provided by statements made by two company officials to Avery at the time of the adverse action that it was due to him engaging in union activity on company time. And there's also circumstantial evidence based on disparate treatment with respect to cell phone use, as well as alleged falsification of records. The Board also, third, reasonably rejected the company's affirmative defenses. This case is directly akin to both right line and transportation management, where an employer had attempted to raise an affirmative defense regarding unscheduled work breaks and also alleged falsification of records. Also notably, not only is Avery directly told that his adverse action is due to his union activity, but the discharge letter makes significant the fact that he was acting as a representative. I mean, in fairness, the statement that he is told is that he's being let go because of the time, because of the time that he had spent, and that the time was, of course, on the union stuff. But I'm not sure I agree that he was told specifically he was being let go because of his union work. It was more like the time that he spent, which was on the union work. Your Honor, at the time of the suspension, he was specifically told by both the plant manager and the human resources manager, Burks, that he was being suspended due to his engaging in union activity on company time. Right. It's that second part that the company focuses on to make the statement complete. Right? And so, their position generally is, yes, in a sense, he was terminated for doing union stuff, but it wasn't just because he was doing union stuff. It was because he was doing it in a way that was not allowed on company time. Correct, Your Honor. No one is disputing that this was on company time, but the question becomes, was essentially, is there a real reason because he was engaged in union activity, or did the company set forth an affirmative defense that it would have taken this action otherwise? And in this case— The standard is whether or not it was a motivating factor, right? Right. The board— Not the only factor. Right. Initially, there needs to be substantial evidence that union activity was a motivating factor, and at that point, the company needs to show by a preponderance of the evidence that it would have taken the same action otherwise. And here, at the time of the suspension, he's not told that he improperly extended his break. He's not told that he falsified records. He's told that he is suspended because he participated in union activity on company time. And then, in the discharge letter, it makes specific reference to him having engaged as a representative. And when human resources manager Burks, at pages 477 to 82 of the record, is asked about why is that letter referencing that, she went on about the significance of him acting as a union representative. And so— Was there anything in the rules or regulations of the operation of the company that said you can perform union activities on company time or not? No, Your Honor, and an employer has every right to ask that employees work on working time, but it cannot disparately treat somebody simply—and this is a—what was referenced about a no solicitation rule. Yes, there can be a no solicitation rule, but it can't be limited to just union activity. It would have to apply to other types of solicitation. And here, there not only, again, is a discharge letter and the testimony focusing on the fact he was engaged in union activity, the board reasonably, in that context, found it pretextual that the company is trying to rely on other factors, that it's essentially an afterthought. And with respect to the falsification of records, again, there's credited testimony that employees did take unscheduled breaks and were not disciplined. And then the board very reasonably looked at another situation where someone was not discharged and, in fact, only got a second last chance warning when that employee had admittedly put the company at legal liability. Did any of the other people have already had the second chance letter sent to them? Yes, Your Honor, that very employee that had—was given a second—so Avery had been given a last chance letter, and this employee who was not discharged after falsifying weights on trucks had already been on a—and not only had been on a last chance agreement, but had numerous other disciplinary issues. And in the opening brief, the company tried to argue that, well, it was because supervisors were complicit in that action, and that simply is not in the record. And in the reply brief, they try to back off and simply say, well, it was lack of oversight. Well, you can make the same argument here. There's no dispute that Avery was on the phone call. The head person knew he was on the phone call, and nobody had any issue with his actions that day. Nobody asserted that he didn't get any work done. And again, the testimony, the accredited testimony, is that employees could take unauthorized breaks as long as their work was done, and there's simply no issue related to Avery's work for that day. And unless this Court has any further questions, we have the remaining time and intervener's time to intervene in counsel. All right. Thank you very much. Wait, Mr. Starling. Oh, yes, sir. You've got to hold on for a couple of minutes. Good morning, and may it please the Court. My name is Richard Boko, and I represent United Steelworkers in this matter. I think, Judge Rosenbaum, you pointed out the issue that Mr. Avery did have a relatively clean work record for over 27 years, and that the discipline didn't start until there was issues between the union and the company with respect to collective bargaining, and which occurred in 2018. It was only after there were these issues about the company implementing its offer, and that there was opposition on the part of the unit to the company's implementation, that Mr. Avery starts to get disciplined, that they start to focus on his union activity, his representational activity, in order to discipline him. And the purpose from that, I think, if you look at the context, is that I think the substantial evidence from which the ALJ drew the conclusion that, given this context, it's reasonable to assume that the reason Mr. Avery was being disciplined, unlike other individuals who were not disciplined for the same alleged misconduct, was because they were wishing to weaken the union. Because Mr. Avery was the focal point of the union's challenges, of local union's challenges to the company's conduct. Now, the last point I'd like to make is that, in this particular case, the company bears the burden of proving, beyond preponderance of evidence, that his union activity was not the reason for why he was discharged. In other words, absent the union activity, which they concede he was engaged in at the time when he was involved in the unemployment compensation hearing, that that was not the reason for it. It's the burden on the company, and I think there's substantial evidence in the record to draw from which the ALJ, and in fact the Board itself, drew the conclusion that the company's defenses here were unpersuasive, that the company did not, in fact, meet its burden. And unless there's some questions from the Court, that will conclude my presentation. Thank you. Thank you very much. Yes, Your Honors, the only way the ALJ really addressed the company's legitimate reason for terminating Mr. Avery, which was set forth very straightaway, he violated the rule about taking leave without approval. He didn't correct his time records. What he's asked for is essentially that because he's engaged in union activity, those rules don't apply to him. But they do. And the Board has made clear that you can apply nondiscriminatory rules to someone who is a union representative, even when they're engaged in union activity. The Board... What do you do with that other employee, though? Absolutely fair, which is that the evidence of pretext, if you dig down into it, what you will see is the evidence of other people using cell phones, which is what the ALJ pointed to in one instance. No, I'm not worried about cell phones. The other employee who was on a last chance agreement for falsifying, I think it was waste or something else. There were, yes, there were a number of employees who engaged in falsification of weight records for truck weights, who were not on last chance agreements. They were given last chance agreements. But there was one on a last chance... Was one, yes, Mr. Albert Thomas. Why wasn't he terminated? There were two reasons that the company stated at trial that he was not terminated. Number one was because they believed that supervisors were complicit in some form of having those records be incorrect. And number two was the company took the position that he had multiple EEOC charges pending and that they were not comfortable at that time making a termination decision. That was the explanation the company offered. That's a, that's, that is a, an explanation that a fact finder could have accepted, but didn't accept. Right. So, you're in a tough spot. But understand that that can go to a credibility decision, but it's not one where there is contrary evidence. There wasn't any additional evidence put forth that that was untrue. And that's where we get into the issue of the ALJ discrediting the testimony. He doesn't have to, the ALJ doesn't have to believe that, even in the absence of contrary evidence, right? Well, it depends on how the ALJ gets there. If the ALJ provides a good reason and explanation, then that's one thing, but the ALJ in this case made a blanket statement that she was not going to credit the testimony of company witnesses at the very outset, saying that no matter what they said, unless they were corroborated or they were against their own interests, that she was going to find they were not credible. That's not a finding that's based on evidence in the record. But that's not absolutely accurate, because there were some things that she did credit the company witnesses on. It's just that the reasons for what they did, she didn't credit. I think what she wrote, I believe, is, I am not crediting the company's testimony by its witnesses absent of being against their interest or corroborated by other evidence. And that blanket type of statement is credibility is unfounded. It's not supported by board wall or by any rules that the board has followed. Those were the only, so the only evidence... I'm sorry, I'm confused. You're saying, are you saying that she said at the outset of the hearing, that is before she heard the evidence, that she wasn't going to credit the witnesses for the company? No, Your Honor. At the outset of her opinion on crediting the testimony of the witnesses. I mean, that was after she had already heard all of the evidence. And she was entitled at that point to make credibility determinations based on what she listened to, wasn't she? She's entitled to make credibility determinations based on facts and what she hears. But making a blanket statement that all company witnesses are incredible, absent their testimony being contrary to their own interest, or there has to be other corroborating evidence, is not supported by any rule or the testimony in this case. That is just a blanket statement that I'm not crediting the testimony of the company's witnesses. I would agree with you if it were the case that she hadn't heard the testimony and she hadn't given reasons along the way why she wasn't crediting the company witnesses. But, I mean, that's her job, is to determine who's credible and who is not. Why is it a problem if instead of going one by one and saying, I'm not crediting this one unless it was against, you know, if there's corroborating evidence or whatever, and going through each specific witness that way, just lumping them all together, if she was going to reach the same conclusion anyway, why is that? Why is that necessarily problematic? Because there's been no MRB decision or rule, there's been nothing procedurally put in place that says that you may generally discredit one party's witnesses. And that is exactly the position she took, which is that, I discredit... That's a conclusion you're drawing. Her position is, you know, I listened to all the testimony and I didn't find them credible. So, that she's saying it in one, you know, one sentence or two sentences, as opposed to going through and having one sentence for each specific witness, I'm not sure that really makes any difference. It's... Well, it's... Part of the problem is that if you give a blanket finding that the witnesses for one party are not credited, then even uncontested statements by those witnesses are now not being credited. It's... There's no basis for having a blanket. But you're... But you say... And you're right. You're right in summarizing what the ALJ said in Section 4B of the opinion. But after making that statement, she goes on for a number of paragraphs and she talks about the reasons why she's discrediting Mr. Berry. She talks about why she's discrediting Mr. McCallum. And she talks about why she's discrediting Mr. Burks. So, it's not that she says that in a little paragraph and then stops. She says, for example, that Mr. Berry contradicted himself, that there were all sorts of leading questions put to them, and the leading questions suggest the answer. So, she provided some context for her statement. Does that make a difference? It does, except I think as you, again, as you dig into those, you will see that the, for example, the leading questions, in many cases, A, are not leading, B, go to testimony that had already been admitted, oftentimes by the opposing party, or C, go to the facts that are not an issue. And yet we still get this statement that I'm discrediting all his testimony because of leading questions. And that's... Those questions don't fall within either category of being leading under 611C or, again, they are supported by other evidence in the record. So, below that blanket statement, if you dig into the facts, there still is not a support for coming to that conclusion based on the way she analyzed the credibility of that statement. So, your real argument isn't that she made the statement that she was discrediting the company witnesses. It's the reasons that she discredited the company witnesses. That is the reason she didn't credit the company. In part. But I go back to what I said at the very beginning. The core facts are not in dispute. In this case, the facts as to what Mr. Avery did are not in dispute. The company terminated him for violating rules. But the inferences are completely in dispute. The inferences to be drawn from the undisputed facts are in dispute. There are... You said you terminated him because he was doing union work on company time and violation of company policy. Correct. Did you really mean that or are you just making that up? So, yes, you're right that some of the underlying background facts are not in dispute, but the inferences are. Okay, Mr. Sarling, thank you very much. Thank you. Mr. Sy, Mr. Rockwell, thank you very much as well.